
CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

DEC 10 2015

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ADAM NICHOLAS CASEY,<br>    Plaintiff, | Civil Action No. 7:14-cv-00714 |
| v. | **MEMORANDUM OPINION** |
| CENTRAL VIRGINIA REGIONAL<br>JAIL, et al.,<br>    Defendants. | By:  Hon. Jackson L. Kiser<br>       Senior United States District Judge |

Adam Nicholas Casey, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff names as defendants: the Central Virginia Regional Jail ("Jail"); former Jail Superintendent Floyd Aylor; "Medical Officers"; "Other Unknown Officers"; and Orange County. This matter is presently before me upon Superintendent Aylor's motion to dismiss and Plaintiff's motions to amend the complaint. After reviewing the record, I grant in part and deny in part the motions to amend, grant Superintendent Aylor's motion to dismiss, and strike the case from the active docket.

I.
A.

Plaintiff arrived at the Jail on February 22, 2013, and told an intake nurse that he had injured his back in a car accident about a year earlier. Plaintiff explained "where he sought treatment from [d]octors and [h]ospitals" and the reasons why certain medications had been prescribed to him, but the nurse did not tell Plaintiff how to obtain pain medications.

Plaintiff inquired three weeks after his arrival about how to obtain pain medications and muscle relaxers. Staff explained that the Jail's doctor had to evaluate Plaintiff before he could receive medications. After nine days of not hearing anything else from medical staff, Plaintiff filed grievances because he was not receiving medical care to treat his back pain. Staff

responded, noting that Plaintiff never filed a request for an appointment with the doctor. Medical staff scheduled him to see the doctor once Plaintiff submitted the request on March 25, 2013.

Two days later on March 27, 2013, Plaintiff had his appointment with the doctor. Plaintiff explained his medical history, including his back injuries and pain, how his back injury made it difficult to get in and out of his top-bunk assignment, and that he needed something to help with an onset of anxiety. The doctor told Plaintiff he would receive Nuroton, Naproxin, Flexerall, and Elavil to treat his back, pain, and anxiety.

At pill call the next day on March 28, 2013, Plaintiff was given only Nuroton and Elavil. Plaintiff filed a grievance about the missing prescriptions, and staff said the doctor prescribed one dose of Elavil at night and three doses of Neurotin during the day.

Plaintiff met with a physician's assistant ("PA") on April 4, 2013, and demanded prescriptions for Naproxin and Flexerall and a bottom-bunk assignment. The PA granted Plaintiff's request for the two prescriptions but would not consider modifying Plaintiff's bunk assignment. Plaintiff filed grievances requesting a bottom bunk or a top bunk with a ladder, but staff explained that the medical department had not approved a bottom-bunk assignment and that the Jail did not have bunks with ladders. Plaintiff also filed grievances about having to pay copayments for medical appointments and treatments.

Plaintiff further complains that most of his food at the Jail was always inedible because it was dried out by the warming trays. Plaintiff complained to staff about the food, and after the warming trays were turned down, Plaintiff was upset because he believed there was a risk that bacteria could have grown in the food. Plaintiff also complained that he received regular milk instead of "Vitamin D milk."

2

Plaintiff alleges that Superintendent Aylor was responsible, as the Jail's commanding officer for the training, supervision, and conduct of Jail staff. He seeks damages for alleged violations of the Eighth and Fourteenth Amendments and various state laws.

**B.**

In a document attached to the complaint, Plaintiff further alleges that officers' treatment of him was disrespectful. Plaintiff explains that he was working out and doing push-ups in his cell on April 29, 2013, when his back "went out and started locking up on him[,]" causing "extreme pain[.]" Plaintiff complained to Officer Dotson, who gave Plaintiff a medical request form and offered to deliver it to medical staff right away. Plaintiff wrote on the form, "My back is locking up due to the muscle spasms are very intense [sic]. I need medical attention ASAP. I also cannot sit [and] . . . cannot get up or down off my bunk because I have a top bunk." Plaintiff gave Officer Dotson the form, and at some time later that day, Officer Dotson told Plaintiff he could meet medical staff during pill call four hours later.

Medical staff assessed Plaintiff during pill call and determined Plaintiff could wait until the next day to meet with the doctor. Plaintiff refused to return to his cell, and security staff escorted him to a segregation cell.

Plaintiff complains that security staff would not assign Plaintiff to a bottom bunk on the ground floor of the Jail, notwithstanding medical staff's refusal to order a bottom bunk pass as medically necessary. Consequently, Plaintiff is upset that security staff made Plaintiff walk up and down stairs, climb into and out of a top bunk, and did not allow him exceptional privileges, like not using security restraints during transport or wearing specific clothing, due to his back pain.

3

During an escorted move from an upper level of the Jail to a lower level, Plaintiff experienced significant back pain and laid on the floor at the bottom of a set of stairs. Officer Dotson had a wheelchair brought to Plaintiff, requested medical assistance for Plaintiff, and had Plaintiff brought to the medical department. Plaintiff received prescriptions for and pain and muscle relaxers.

During another instance, Lieutenant Akers brought Plaintiff a wheelchair and told officers that Plaintiff had to be taken to his segregation cell instead of to the classification officer's office. Before Plaintiff was fully seated in the wheelchair, Lt. Akers began pushing him and the wheelchair down the hall. Plaintiff began yelling very loudly for the classification officer to help him and began to "straighten out" his body in the wheelchair. In response to Plaintiff's sudden movement and yelling, Lt. Akers pulled back on Plaintiff's jumpsuit, which cut off Plaintiff's breathing "for a second." Plaintiff exclaimed to Lt. Akers that his sudden movement was from a muscle cramp, and Lt. Akers released Plaintiff's jumpsuit. When the classification officer asked Plaintiff what was wrong with him, Lt. Akers interrupted and said, "Nothing, he is fine." The classification officer then instructed the escorting officers to put Plaintiff in a ground-floor cell. Plaintiff was transferred out of the Jail the next day.

## II.

Plaintiff's first motion to amend seeks to dismiss Orange County from the lawsuit and to rename defendant "Medical Officers" as "Unknown Medical Officers." Plaintiff's second motion to amend seeks to join several defendants: Frank Dyer, who replaced defendant Aylor as Superintendent in June 2015; Jail officers Captain Ryder and Officer Dodson; and the Central Virginia Regional Jail Authority ("Authority"). Plaintiff does not allege new facts about these proposed defendants.

4

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading once as a matter of course within 21 days of serving the pleading or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." If a party seeks to amend its pleadings in all other cases, it may only do so with the court's leave or the opposing party's written consent.[1] A court should freely give leave when justice so requires absent some reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)(2)).

The court must also consider the more specific joinder provisions of Rules 19(a) and 20(a) when a plaintiff files a motion to amend that seeks to join additional defendants. Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 618 (4th Cir. 2001). The proposed defendants must have a right to relief asserted against them, "arising out of the same transaction, occurrence, or series of transactions or occurrences[,]" and the claims must share some "question of law or fact common to" all defendants. Fed. R. Civ. P. 20(a)(2).

The first motion to amend is granted in part as to dismissing Orange County from the suit, but the motions to amend are otherwise denied as futile. Whether a defendant is named "Medical Officers" or "Unknown Medical Officers" is of no consequence. Collective defendants, like defendants "Medical Officers" and "Other Unknown Officers" are not permitted in an action via 42 U.S.C. § 1983. See, e.g., Ferguson v. Morgan, No. 1:90cv06318, 1991 U.S. Dist. LEXIS 8295, at *2-4, 1991 WL 115759, at *1 (S.D.N.Y. June 20, 1991) (concluding that a

---

[1] No defendant has consented.

group of personnel, like "medical staff," is not a "person" for purposes of § 1983). Also, Plaintiff has been released from incarceration, he was not incarcerated at the Jail during Dyer's term as Superintendent, and there is no expectation that Plaintiff will commit a crime or violate a term of supervised release to warrant his re-incarceration at the Jail under Dyer's supervision. See, e.g., L.A. v. Lyons, 461 U.S. 95, 111-12 (1983). Therefore, there is no basis to join Dyer as a defendant in either an official or individual capacity.

Although Plaintiff seeks leave to join the Authority as a new defendant, he fails to allege any facts against this proposed entity. Even if a claim of municipal liability could be tortured from Plaintiff's filings, he fails to demonstrate any cause for relief. See Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (refusing to impose § 1983 liability on a municipality under a theory of respondeat superior); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (defining municipal § 1983 liability). Plaintiff cannot rely on rank speculation, labels, and conclusions to state an actionable claim. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiff's amendments to join Officers Ryder and Dodson are also futile. Plaintiff complains that Captain Ryder told him he could not get a bottom-bunk assignment because none were available and because he wrote the following response to Plaintiff's grievance:

> Inmate meals are approved according to the Recommended Dietary Allowances (RDA) for males ages 25 - 50 years old. The inmate meal trays are taken off of the heated (when there is a hot meal) closed food cart by an inmate wearing gloves and a hair net. It is then directly handed to you the inmate. Do [sic] to the high volume of inmates, it is impossible and not expected to hand you a tray straight from the serving line in the kitchen. As for your muscle spasm, our onsite medical staff cannot write prescriptions if they are needed. Therefore, it is necessary for you to request to see a Doctor or Physicians Assistant on an inmate request form. Have you requested to be seen? There are also established criteria for inmates that request a bottom bunk. The Doctor or Physicians Assistant will review your needs for this

6

> request also. Have you requested on an inmate request form to be evaluated? As for the ride of our inmate transport vehicles not being to your liking or up to your standard, our vehicles are serviced and inspected on a regular basis. Vehicle repairs are made as needed with Officer and inmate safety being a priority. In closing, I want to advise you that there are certain inconveniences to be expected as an incarcerated individual. Also, the United States Marshal Service conducts a yearly inspection of our facility and approves our facility to be in compliance of their requirements to house their inmates.

Plaintiff fails to specify a claim against Captain Ryder, and no federal claim upon which relief may be granted is evident from Captain Ryder's alleged statements. See, e.g., DePaola v. Ray, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) ("A superior's after-the-fact denial of a grievance falls far short of establishing § 1983 liability.").

As for Officer Dodson, Plaintiff asked Officer Dodson for medical assistance on April 29, 2013, because his back muscles started to cramp while working out in his cell. Officer Dodson gave Plaintiff a request form, which Plaintiff completed and gave back to Officer Dodson. The form read, "My back is locking up due to the muscle spasms are very intense [sic]. I need medical attention ASAP. I also cannot sit. Further, I cannot get up or down off my bunk because I have a top bunk." During another interaction, Officer Dotson had a wheelchair brought to Plaintiff so he did not have to walk in pain and had Plaintiff delivered to the medical department for treatment.

Nowhere in the complaint does Plaintiff explain how Officer Dodson knew of or recklessly disregarded a substantial risk of harm due to Plaintiff's back spasms. See, e.g., Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004); Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990). Even if a four-hour delay for a medical evaluation could be attributed to Officer Dodson on April 29, 2013, Plaintiff fails to establish any resulting substantial harm. See,

7

e.g., Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir 2008). Plaintiff also fails to describe a serious medical need because the PA who evaluated Plaintiff on April 29, 2013, deferred any treatment and further evaluation until the next day. During the second episode on a different day, Plaintiff collapsed at the bottom of the stairs, and Officer Dodson had a wheelchair brought to Plaintiff so Plaintiff could get to the medical department for treatment without having to walk in pain. Accordingly, the amendments involving Officers Ryder and Dodson are denied as futile.

### III.

I must dismiss an action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting a plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).[2]

---

[2] Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although I liberally construe

8

## IV.
### A.

Plaintiff fails to describe any individual action by Superintendent Aylor that violated Plaintiff's federal rights actionable via § 1983. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Plaintiff's claims about "training, supervision, and conduct" are entirely conclusory and fail to satisfy the elements of such claims even if they were asserted against an appropriate defendant. See, e.g., Monell, 436 U.S. at 694. Plaintiff does not allege a single fact showing that Superintendent Aylor had any involvement with or knowledge of Plaintiff's complaints about a housing assignment, alleged back pain, medications, anxiety, food, or anything else.

To the extent Plaintiff speculates that a policy or custom created, implemented, or perpetuated by Superintendent Aylor caused the bases of his various complaints, he fails to state a claim. Plaintiff fails to sufficiently allege Superintendent Aylor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the Plaintiff; Superintendent Aylor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and that there was an "affirmative causal link" between Superintendent Aylor's alleged inaction and a particular constitutional injury Plaintiff had suffered. See, e.g., Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

There is no basis for holding Superintendent Aylor liable for Plaintiff's dissatisfaction with any medical care or being charged copayments for services. See, e.g., Boblett v. Angelone,

---

pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), I do not act as an inmate's advocate, sua sponte developing statutory and constitutional claims not clearly raised in a complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

9

957 F. Supp. 808, 813 (W.D. Va. 1997) ("Corrections officials are entitled to rely on the expertise of their institution's medical staff . . . ." (citing Miltier v. Beorn, 896 F.2d 848, 854-55 (4th Cir. 1990))). An inmate has "no constitutional right to free medical care," and it is well settled that inmates may be charged copayments for medical services. Boblett v. Angelone, 942 F. Supp. 251, 254 (W.D. Va. 1996) (noting plaintiff's contention that "as a result of the policy regarding medical copayments, he is often forced to choose between necessary toiletries and adequate medical care" failed to state a claim for violation of his constitutional rights), aff'd, 121 F.3d 697 (4th Cir. 1997). Plaintiff's allegations show that he was not denied medical treatment because of any inability to pay.[3]

Nor does Plaintiff's dissatisfaction with the temperature, quality, or portion size of his food or drinks state any actionable claim or describe any injury of constitutional dimensions. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Henderson v. Virginia, 2007 U.S. Dist. LEXIS 70207, at *26, 2007 WL 2781722, at *7 (W.D. Va. Sept. 21, 2007) (Conrad, J.) (unpublished). Accordingly, Superintendent Aylor is entitled to qualified immunity, and his motion to dismiss is granted.

## B.

The remaining defendants – "Medical Officers," "Other Unknown Officers," and the Jail – are not proper defendants to an action pursuant to 42 U.S.C. § 1983. See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); Preval v. Reno, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a "person," and therefore not amenable to

---

[3] Although Plaintiff cites 18 U.S.C. §§ 4006, 4013(d), and 4048(a)(4)(A)(B)(i)(ii) and (h)(1)-(2) as bases for why he should not have to pay copayments for medical services, nothing therein precludes the Jail from charging a fee for medical services. Additionally, Plaintiff fails to establish that he has a private cause of action under those statutes. See, e.g., Treadway v. Voutour, No. 10-CV-00042A(F), 2012 U.S. Dist. LEXIS 148828, at *20-21, 2012 WL 4959414, at *7 (W.D.N.Y. Sept. 27, 2012).

10

suit under 42 U.S.C. § 1983."), aff'd in part and rev'd in part, 203 F.3d 821 (4th Cir. 2000), reported in full-text format at 2000 U.S. App. LEXIS 465, at *3, 2000 WL 20591, at *1 ("The court also properly determined that the Piedmont Regional Jail is not a 'person' and is therefore not amenable to suit under § 1983[.]"); Ferguson, No. 1:90cv06318, 1991 U.S. Dist. LEXIS 8295, at *2-4, 1991 WL 115759, at *1 (concluding that a group of personnel, like "medical staff," is not a "person" for purposes of § 1983). Accordingly, claims against these defendants are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

V.

For the foregoing reasons, I grant in part and deny in part Plaintiff's motions to amend; they are granted as to dismissing any claim against Orange County, and they are denied in all other respects. Superintendent Aylor's motion to dismiss is granted, and I decline to exercise supplemental jurisdiction over any state law claim, pursuant to 28 U.S.C. § 1367(c)(3).

**ENTER**: This 10th day of December, 2015.

                                                                                    *[signature]*
                                                               Senior United States District Judge